**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

| | |
|---|---|
| **BILLY M. COLLINS,** ) | |
|    Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 2:07cv00015 |
| ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE**, ) | |
|  **Commissioner of Social Security,** ) | By: PAMELA MEADE SARGENT |
|    Defendant ) | UNITED STATES MAGISTRATE JUDGE |

*I. Background and Standard of Review*

Plaintiff, Billy M. Collins, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for supplemental security income, ("SSI"), and disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 and § 1381 *et seq.* (West 2003 & Supp. 2008). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 1383(c)(3) (West 2003 & Supp. 2008). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning

Case 2:07-cv-00015-JPJ-PMS   Document 20   Filed 08/11/08   Page 1 of 19   Pageid#: 78

mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Collins protectively filed his applications for SSI and DIB on March 24, 2005, alleging disability as of October 1, 2003, due to high blood pressure, diabetes, gout, depression and Bell's palsy. (Record, ("R."), at 41-43, 49, 52, 281-84.) The claims were denied initially and upon reconsideration. (R. at 24-26, 30, 32-34, 286-88, 292, 294-96.) He then requested a hearing before an administrative law judge, ("ALJ"), who held a hearing on August 15, 2006, at which Collins was represented by counsel. (R. at 35, 297, 335-65.)

By decision dated October 12, 2006, the ALJ denied Collins's claims. (R. at 13-20.) The ALJ found that Collins met the disability insured status requirements of the Act for DIB purposes through the date of his decision. (R. at 19.) The ALJ found that Collins had not engaged in substantial gainful activity since October 1, 2003. (R. at 19.) The ALJ found that the medical evidence established that Collins had severe impairments, namely gout, diabetes, obesity and recurrent major depressive disorder, but he found that Collins did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found at 20 C.F.R. Part 404, Subpart, Appendix 1. (R. at 19.) The ALJ found that Collins's allegations regarding his limitations were not totally credible. (R. at 19.) The ALJ found that

Collins had the residual functional capacity to perform simple, low-stress light work[1] that did not require him to regularly interact with the general public. (R. at 20.) Thus, he found that Collins was unable to perform any of his past relevant work. (R. at 20.) Based on Collins's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Collins could perform, including those of a houseman, a janitor, a farm worker, a hand packer, a grader, a sorter, a nonconstruction laborer, a production machine tender, an assembler and a production assembler. (R. at 20.) Thus, the ALJ concluded that Collins was not under a disability under the Act and was not eligible for DIB or SSI benefits. (R. at 20.) *See* 20 C.F.R. §§ 404.1520(g), 416.920 (g) (2008).

After the ALJ issued his decision, Collins pursued his administrative appeals, (R. at 9), but the Appeals Council denied his request for review. (R. at 5-8.) Collins then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2008). The case is before this court on Collins's motion for summary judgment filed September 5, 2007, and the Commissioner's motion for summary judgment filed October 3, 2007.

## II. Facts

Collins was born in 1972, which classifies him as a "younger person" under 20

---

[1]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2008).

C.F.R. §§ 404.1563(c), 416.963(c) (2008). (R. at 41.) He has a high school education and two years of college education. (R. at 57.) Collins has past work experience in quality assurance for a medical manufacturer. (R. at 59, 66.)

Robert Spangler, a vocational expert, also was present and testified at Collins's hearing. (R. at 360-64.) Spangler was asked to consider a hypothetical individual of Collins's age, education and work history who was restricted to performing simple, low-stress light work that did not require him to regularly interact with the general public. (R. at 361.) Spangler testified that a significant number of jobs existed that such an individual could perform, including jobs as a male maid, a janitor, a farm worker, a hand packer, a grader, a sorter, a nonconstruction laborer, a production machine tender, an assembler and a production inspector. (R. at 361.) Spangler testified that these jobs would be eliminated if the individual's ability to concentrate or persist at work tasks was greater than moderately impaired. (R. at 362.) Spangler also testified that there would be no jobs available if the limitations as set forth by psychologist Leizer and the Global Assessment of Functioning, ("GAF"), score of 50[2] were considered. (R. at 214-54, 362-63.)

In rendering his decision, the ALJ reviewed records from Dr. Patrick A. Molony, M.D.; Lee County Community Hospital; Ralph Ott, L.P.C.; Dr. Syed Z. Ahsan, M.D.; Joseph Leizer, Ph.D., a state agency psychologist; R. J. Milan Jr., Ph.D.,

---

[2]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

-4-

a state agency psychologist; Dr. Richard M. Surrusco, M.D., a state agency physician; and Dr. Randall Hays, M.D., a state agency physician. Collins's attorney also submitted medical reports from Ott and Dr. Molony to the Appeals Council.[3]

The record shows that Dr. Patrick A. Molony, M.D., began treating Collins for various ailments in 1989. (R. at 124-51.) On September 2, 2003, shortly before Collins's alleged onset date, Collins complained of having a head cold. (R. at 132.) Dr. Molony diagnosed acute sinusitis, acute bronchitis, noninsulin dependent diabetes mellitus, high blood pressure, obesity and hyperlipidemia. (R. at 132.) Dr. Molony noted that overall Collins was "doing reasonably well." (R. at 132.) While Dr. Molony's notes do not list any psychiatric or psychological condition, the note states that he issued Collins prescriptions for Effexor, Ativan and Buspar. (R. at 132.)

Collins did not return until March 15, 2004. (R. at 131.) At that time, he complained of swelling and pain in his right elbow. (R. at 131.) He was diagnosed with gout. (R. at 131.) Collins was next seen on October 14, 2004, reporting that he stopped taking his blood pressure medications. (R. at 130.) He reported that he was a nursing student and had lost his job, so he had no medical insurance. (R. at 130.) Dr. Molony diagnosed poorly-controlled hypertension, hyperlipidemia, noninsulin dependent diabetes mellitus and obesity. (R. at 130.) On November 11, 2004, Collins's blood pressure was elevated, but he had no edema in his extremities. (R. at 129.) He reported that Effexor was helping his depression. (R. at 129.)

---

[3]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 5-8), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

-5-

On March 22, 2005, Collins reported that his "nerves are shot." (R. at 128.) He reported that he was not working, but had tried to find a job at numerous places. (R. at 128.) Dr. Molony referred Collins for psychiatric help. (R. at 128.) On April 12, 2005, Dr. Molony reported that Collins's blood sugar level was high. (R. at 127.) On April 28, 2005, Collins reported doing much better, and he stated that mental health counseling was helping him quite a bit. (R. at 126.) He also reported that Effexor continued to help him feel better. (R. at 126.) Dr. Molony reported that, although not controlled, Collins's blood sugar level was doing much better. (R. at 126.) On May 19, 2005, Dr. Molony reported that Collins was "doing quite a bit better. His whole attitude has improved." (R. at 126.) On July 19, 2005, Dr. Molony reported that counseling appeared to be helping Collins. (R. at 125.) He reported that "overall" Collins was doing better. (R. at 125, 267.) On September 19, 2005, Dr. Molony reported that Collins continued to gain weight, and he advised him to watch his diet more closely. (R. at 124.) On November 1, 2006, Dr. Molony indicated that full-time employment would be very limited for Collins. (R. at 334.)

On September 5, 1995, Collins presented to the emergency room at Lee County Community Hospital with complaints of back pain. (R. at 172-73.) He reported working in tobacco and developing severe pain in the lumbosacral spine area. (R. at 172.) No motor or sensory deficit was noted. (R. at 172.) Collins had tenderness and palpation in the lumbosacral spine area. (R. at 172.) He was diagnosed with back pain. (R. at 173.)

On March 30, 2005, Ralph Ott, L.P.C., diagnosed Collins with major depressive disorder and anxiety disorder, not otherwise specified. (R. at 226-30.) Ott indicated

that Collins had a then-current GAF score of 50, with his highest GAF score being 70[4] in the previous six months and his lowest GAF score bing 40[5] in the previous six months. (R. at 226.) On April 14, 2005, Collins reported feeling significantly better. (R. at 210.) Ott reported that Collins's mood was euthymic, with good range of affect. (R. at 210.) Collins's attention and thought processes were within normal limits. (R. at 210.) On April 21, 2005, Collins reported continuing improvement in his mood. (R. at 208.) He reported that he would like to go to seminary if he could afford it. (R. at 208.) Ott reported that Collins's mood continued to be depressed, but with improving affective range. (R. at 208.) Attention and thought processes were within normal limits. (R. at 208.)

On April 28, 2005, Ott completed a Mental Status Evaluation Form indicating that Collins suffered from severe recurrent major depressive disorder without psychotic features. (R. at 200-04.) Ott reported that Collins was able to keep up activities of daily living, including cleaning, cooking and providing care for his mother. (R. at 201.) While Collins was tearful and depressed at times, he reported an improved mood. (R. at 202.) Ott reported that Collins was able to function well cognitively. (R. at 203.) On May 12, 2005, Ott reported that Collins's mood was moderately depressed with improving affective range. (R. at 199.) Attention and thought processes were within normal limits. (R. at 199.) On May 18, 2005, Ott

---

[4]A GAF score of 70 indicates that the individual has "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... , but [is] generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

[5]A GAF score of 31-40 indicates some impairment in reality testing or communication or makor impairment in several areas, such as work or school, family relations, judgment, thinking or mood.

-7-

reported that, overall, Collins was getting better. (R. at 197.) On June 1, 2005, Ott reported that Collins's mood was moderately depressed, but with good range of affect. (R. at 187.) His attention and thought processes were within normal limits. (R. at 187.) On June 8, 2005, Collins reported that he had been looking for jobs, but could not find work. (R. at 185.) He reported that he felt somewhat better since taking Lexapro. (R. at 185.) On July 26, 2005, Collins reported that he had attended job interviews. (R. at 178.) Ott reported that Collins's mood was moderately depressed, but with good range of affect. (R. at 178.) Ott suggested that Collins continue to look for work. (R. at 178.)

On June 2, 2006, Collins reported that he had quit a new job because he could not handle the stress. (R. at 271.) He reported that he had agreed to be associate pastor and to teach Sunday School at his home church. (R. at 271.) On November 7, 2006, Ott indicated that Collins's diagnosis was bipolar I disorder with the most recent episode being depression, in partial remission. (R. at 332-33.) He reported that Collins's predominant presentation tended to be chronic depressed mood. (R. at 332.) He reported that there had been extended periods of decompensation which markedly interfered with Collins's ability to find or hold down a job. (R. at 332.) Ott reported that Collins could not hold down a job due to the combined effects of his health problems and his persisting mood disorder. (R. at 333.) Ott reported that with combined treatment, Collins would be a good candidate to receive further schooling and return to work once his mood instability was better controlled. (R. at 333.)

On May 10, 2005, Joseph Leizer, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Collins suffered from

an affective disorder and an anxiety-related disorder. (R. at 234-50.) Leizer indicated that Collins had mild restriction of activities of daily living. (R. at 244.) Leizer indicated that Collins had moderate limitations in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 244.) No episodes of decompensation were noted. (R. at 244.) This assessment was affirmed by R. J. Milan Jr., Ph.D., another state agency psychologist, on August 18, 2005. (R. at 234.)

Leizer also completed a mental assessment indicating that Collins was moderately limited in his ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors. (R. at 251-54.) This assessment was affirmed by state agency psychologist Milan on August 18, 2005. (R. at 253.)

On May 10, 2005, Dr. Richard M. Surrusco, M.D., a state agency physician, indicated that Collins had the residual functional capacity to perform light work. (R. at 255-63.) Dr. Surrusco indicated that Collins could stand and/or walk a total of at least two hours in an eight-hour workday. (R. at 256.) No manipulative, visual or communicative limitations were noted. (R. at 259-60.) Dr. Surrusco indicated that Collins could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 259.) He indicated that Collins should avoid concentrated exposure to extreme cold,

-9-

Case 2:07-cv-00015-JPJ-PMS   Document 20   Filed 08/11/08   Page 9 of 19   Pageid#: 86

extreme heat, wetness, humidity, noise, vibration and fumes and that he should avoid all exposure to work hazards. (R. at 261.) Dr. Surrusco indicated that Collins's allegations were partially credible, but that the findings did not support an inability to work. (R. at 262.) This assessment was affirmed by Dr. Randall Hays, M.D., another state agency physician, on August 18, 2005. (R. at 263.)

On May 27, 2005, Dr. Syed Z. Ahsan, M.D., saw Collins for his complaints of depression. (R. at 189-94.) Collins had a euthymic mood with full range of affect. (R. at 193.) Judgment and insight was described as good and fair, respectively. (R. at 193.) Collins reported his depressive symptoms to be mild to moderate, as he had been able to manage his affairs. (R. at 193.) Dr. Ahsan diagnosed major depression, recurrent, of moderate severity, and anxiety disorder, not otherwise specified. (R. at 193.) He diagnosed Collins's then-current GAF score at 55 to 60,[6] with his past GAF score being 65 to 70.[7] (R. at 193.) On July 25, 2005, Dr. Ahsan reported that he had "no doubt this young man is depressed but I sense he is sabotaging efforts to help himself be well." (R. at 179.) He reported that Collins lacked insight and motivation. (R. at 179.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB and SSI claims.

---

[6] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

[7] A GAF score of 61-70 indicates that "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... , but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

-10-

*See* 20 C.F.R. §§ 404.1520, 416.920 (2008); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether the claimant: 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920 (2008). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in the process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2008).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairment. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2008); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano,* 617 F.2d 1050, 1053( 4th Cir. 1980).

By decision dated October 12, 2006, the ALJ denied Collins's claims. (R. at 13-20.) The ALJ found that the medical evidence established that Collins had severe impairments, namely gout, diabetes, obesity and recurrent major depressive disorder, but he found that Collins did not have an impairment or combination of impairments

that met or medically equaled one of the listed impairments found at 20 C.F.R. Part 404, Subpart, Appendix 1. (R. at 19.) The ALJ found that Collins had the residual functional capacity to perform simple, low-stress light work that did not require him to regularly interact with the general public. (R. at 20.) Thus, he found that Collins was unable to perform any of his past relevant work. (R. at 20.) Based on Collins's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Collins could perform, including those of a houseman, a janitor, a farm worker, a hand packer, a grader, a sorter, a nonconstruction laborer, a production machine tender, an assembler and a production assembler. (R. at 20.) Thus, the ALJ concluded that Collins was not under a disability under the Act and was not eligible for DIB or SSI benefits. (R. at 20.) *See* 20 C.F.R. §§ 404.1520(g), 416.920 (g) (2008).

In his brief, Collins argues that the ALJ erred by finding that he did not meet the listing for an affective disorder, found at § 12.04, and for an anxiety disorder, found at § 12.06. (Memorandum In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 8-12.) Collins also argues that the ALJ erred by finding that he did not meet the listing for a musculoskeletal impairment found, at § 1.00. (Plaintiff's Brief at 8, 12-13.) He also argues that the ALJ erred by failing to give greater weight to the opinions of his treating mental health physicians and counselor. (Plaintiff's Brief at 8, 13-14.) Collins finally argues that the ALJ erred by finding that he was not credible. (Plaintiff's Brief at 8, 14-16.)

Based on my review of the record, I reject Collins's argument that the ALJ

-12-

erred by finding that his depression did not meet or equal the listing for an affective disorder, found at § 12.04. (Plaintiff's Brief 8-12.) The qualifying criteria for the listed impairment for an affective disorder is found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04. To meet the requirements of this section, a claimant must show that he suffers from at least four of the listed symptoms of depressive syndrome, which result in at least two of the following:

1. Marked restriction of activities of daily living;
2. Marked difficulties in maintaining social functioning;
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(A)(1), 12.04(B) (2008). A claimant also may meet the requirements of this section if he has a medically documented history of a chronic affective disorder of at least two years' duration that has caused more than minimal limitation of ability to do basic work activities. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C) (2008).

While Collins's counselor Ott and Dr. Ahsan opined that Collins suffered from major depression and an anxiety disorder, the ALJ gave little weight to these assessments because they were not supported by their own clinical findings, the objective evidence of record or the opinions of the reviewing psychologists. (R. at 16-17.) There is no indication in the record that Collins suffered from more than moderate limitations in his ability to maintain social functioning and to maintain concentration, persistence or pace (R. at 244.) In fact, the record shows that with medication and counseling, Collins showed improvement. (R. at 125-26, 129, 185, 197, 208, 210.)

-13-

"If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). In addition, Dr. Ahsan reported that he sensed that Collins was sabotaging efforts to help himself be well. (R. at 179.) Based on this, I find that substantial evidence exists to support the ALJ's finding that Collins did not meet or equal the requirements of § 12.04.

I also reject Collins's argument that the ALJ erred by finding that his anxiety did not meet or equal the listed impairment for anxiety-related disorders, found at §12.06. To meet § 12.06, a claimant must show by medically documented findings that he suffers from at least one of the following:

1. Generalized persistent anxiety accompanied by three of the following: motor tension, autonomic hyperactivity, apprehensive expectation or vigilance and scanning;
2. A persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity or situation;
3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week;
4. Recurrent obsessions or compulsions which are a source of marked distress; or
5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(A) (2008). A claimant also must show that his condition results in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked deficiencies of concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1,

Case 2:07-cv-00015-JPJ-PMS   Document 20   Filed 08/11/08   Page 14 of 19   Pageid#: 91

§ 12.06(B) (2008). If a claimant cannot show that his condition resulted in two of the previous symptoms, he still may qualify for benefits under this section if he can show that his symptoms have resulted in a complete inability to function independently outside the area of his home. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(C) (2008). Based on my review, I find that the record contains no evidence from any psychological or psychiatric expert stating that Collins's anxiety met these criteria. Therefore, I find that substantial evidence supports the ALJ's finding that Collins's condition did not meet or equal the requirements of § 12.06.

Collins also argues that the ALJ erred by failing to find that he met or equaled the listing for a musculoskeletal impairment, found at § 1.00. (Plaintiff's Brief at 8, 12-13.) The ALJ noted that the evidence of record showed that Collins received only minimal treatment for his physical condition. (R. at 15.) Following his alleged onset date of October 1, 2003, Collins sought treatment for his physical conditions on only 10 occasions in approximately two years. (R. at 124-31.) Furthermore, there is no evidence that Collins sought any regular treatment for his physical impairments after September 2005. *See Mickles v. Shalala*, 29 F.3d 918, 920-21 (4th Cir. 1994) (finding plaintiff's complaints were undermined by the fact that plaintiff only sought limited treatment for his condition). Additionally, during the 10 occasions that Collins did present for treatment of his physical condition, Dr. Molony's treatment notes fail to document any significant limitations resulting from Collins's diabetes, high blood pressure, gout or back pain. (R. at 124-31, 265.) In fact, Collins complained of experiencing symptoms of gout on only one occasion. (R. at 131.) Following this examination, Collins had no further complaints associated with gout, and Dr. Molony never subsequently diagnosed Collins as having gout. (R. at 124-30, 265.) Furthermore, although Collins on occasion had poorly-controlled high blood pressure,

-15-

poorly-controlled diabetes and obesity, Dr. Molony did not document that these conditions resulted in any significant functional limitations that would interfere with Collins's ability to perform work-related activities. In fact, Dr. Molony only diagnosed Collins has having back pain on three occasions. (R. at 124-25, 265.) Based on this, I find that substantial evidence exists to support the ALJ's finding that Collins did not suffer from a musculoskeletal impairment that met a listed impairment.

Collins also argues that the ALJ did not properly consider the treatment records of Ott and Dr. Ahsan. (Plaintiff's Brief at 13-14.) Under 20 C.F.R. §§ 404.1527(d), 416.927(d), the ALJ must give controlling weight to a treating source's opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record. Based on my review of the record, I find that the ALJ did give significant weight to the treatment notes of Ott and Dr. Ahsan when determining Collins's residual functional capacity. The ALJ found that Collins should be limited to simple, low-stress work that did not require him to regularly interact with the public. (R. at 17, 20.) These limitations were consistent with Ott's finding of moderate depressive symptoms and Dr. Ahsan's finding of mild to moderate depressive symptoms. It is also consistent with the fact that Collins returned to being a minister in his church and actively sought employment during the entire time period he underwent treatment. Ott's determination that Collins had a GAF score of 50 is not supported by his own treatment notes and also is inconsistent with Dr. Ahsan's treatment notes. Furthermore, the ALJ's finding with regard to Collins's residual functional capacity is supported by the state agency psychologists' assessments.

Collins further argues that the ALJ erred by finding that his subjective complaints were not entirely credible. When determining Collins's residual functional capacity, the ALJ considered Collins's subjective complaints in accordance with the Commissioner's regulations. *See* 20 C.F.R. § 404.1529, 416.929 (2008); *see also Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Collins asserts that when finding his subjective complaints not entirely credible, the ALJ incorrectly found Collins's daily activities inconsistent with a significant level of mental distress. (Plaintiff's Brief at 14-15.) The objective evidence of record, such as the treatment notes of Collins's counselor and psychiatrist, undermine Collins's statements at the hearing and support the ALJ's conclusion. For example, following his onset date, Collins continually reported looking for a job. (R. at 178, 181, 184-85.) In addition, Collins also acted as the caretaker of his mother throughout the time period at issue. (R. at 181, 183-84, 199-200.) Ott reported that Collins was able to keep up with his daily activities such as cleaning, cooking and providing care to his mother. (R. at 201.) Collins also reported acting as the associate pastor at his church and teaching Sunday School. (R. at 271.) Based on this, I find that substantial evidence exists to support the ALJ's finding that Collins's allegations were not totally credible.

Based on the above, I find that substantial evidence exists in this record to support the ALJ's finding that Collins was not disabled, and I recommend that the court deny Collins's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying an award of DIB and SSI benefits.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists in the record to support the Commissioner's finding as to Collins's mental residual functional capacity;

2. Substantial evidence exists in the record to support the Commissioner's finding as to Collins's physical residual functional capacity; and

3. Substantial evidence exists in the record to support the Commissioner's finding that Collins was not disabled.

## RECOMMENDED DISPOSITION

The undersigned recommends that this court deny Collins's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying an award of DIB and SSI benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in

>part, the findings or recommendations made by the
>magistrate judge. The judge may also receive further
>evidence or recommit the matter to the magistrate judge
>with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 11th day of August 2008.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE